Good morning, and welcome to the Ninth Circuit. I'm Judge Forrest, and with me today are Judge Bybee, and both of us are happy to welcome Judge Gordon, who's visiting us from the District of Nevada. We have a number of cases on the docket this morning. One that has been submitted on the briefs, which we will state for the record. That's Torres-Mendez v. Garland, case number 21-1398. And then we have four matters for argument this morning. Just as a preliminary comment, your time clock there shows how much time you have, and so if you're the appellant and hoping to reserve a little time for rebuttal, you need to make sure that you sit down before that clock runs all the way to zero. If you let us know in advance that you're hoping to reserve some time, we'll do our best to try to give you a signal. And then we have a number of cases that have split argument, where multiple attorneys are going to argue for one side. The clock will be set for your separate time, so you won't have to worry about when your clock goes to zero that you have used all of your companion's time. So with that, we'll start with our first case for argument, which is Enrique Jevons, LLC v. Jay Inslee and Robert Ferguson. This is case number 22-35050. Good morning, Your Honor. May it please the Court, Phil Talmadge here representing the appellant owners in this case. I'd ask to reserve four minutes of rebuttal time if I could. Even in an emergency, the Constitution of the United States is not suspended. As the United States Supreme Court phrased it, the Constitution cannot be put away or forgotten in a pandemic. The district court here erred in dismissing the owner's takings and contract claims arising out of Washington Governor Jay Inslee's eviction moratorium proclamations that essentially allowed the tenants of those owners to reside rent-free in the owner's property, properties even in some instances past the expiration of the lease period. The proclamations deprived the landlords of the right to exclude those tenants, a fundamental right as the United States Supreme Court has identified. And it denied them access to security deposits, actions to collect debt, other usual activities that would be employed by landlords to basically ensure that their rental obligation of the tenants was paid. Given the United States Supreme Court's position on the federal eviction moratorium and Alabama Association of Realtors and its views on the primacy of the right to exclude that were the district court's decision and allow the claims of the owners to proceed on the basis of the takings clause and the contracts clause of the United States Constitution. Counsel, my understanding was that that case that dealt with the federal moratorium did not address takings. Is that correct? It did not expressly, Your Honor, but there was language that suggested the court's view about the takings under the circumstances. The Alabama Realtors Association case was predicated on the scope of the authority of the CDC by statute to issue the proclamation that it issued on eviction moratoria. But there was some language in there that I think suggested the court's view about whether or not a takings analysis was appropriate under the circumstances. Turning first to the landlord's Fifth and Fourteenth Amendment claims, the owners have stated a per se physical taking case as a result of the proclamations that were issued by Governor Inslee after Loretto and after Cedar Point, and certainly by analogy, the Eighth Circuit's decision in Waltz, requiring Washington State to pay them just compensation. This is not a case about whether the state can engage in this kind of activity. The state can. If the state wants to do this, it's certainly within the power of the state to do that. But the question is whether just compensation should be paid to these landlords for the appropriation of their property, even on a temporary basis by the state. We have in this particular case a very clear-cut circumstance of the state's aggressive activity that did deprive the owners of their right to the use of their property and compelling them to take tenants and place tenants on those properties during that period of time. In effect, these proclamations imposed what was a societal obligation expressly on landlords. They bore the onus of the pandemic in connection with the housing situation, something that the United States Supreme Court and Armstrong said could not be done. Fundamental to the relationship between landlords and tenants is the obligation to pay rent. It's a simple relationship. You occupy the premises, you pay rent for the privilege of doing so. In this particular circumstance, the proclamations disrupted that relationship. Part of that relationship, of course, is if the tenant doesn't pay rent, then there are certain remedies that are available to landlords to make sure that the rental obligation is ultimately paid. Eviction is one. The ability to go to court and to have debts secured by a court action. Late fees, use of deposits to satisfy the obligation to pay rent. All of those remedies disappeared under these proclamations. So counsel, I am interested in hearing your takings and contracts clause arguments, but the District Court of Reconsideration, as I read it, dismissed the case as moot. Why don't you have to address that first? Well, I don't think there's mootness here at all, Your Honor, for this reason. First of all, you have... That is what the District Court said, right? Did I read the order correctly? Well, the District Court initially said it was not moot. Right. But on reconsideration, it says all this would be an advisory opinion because everything's expired. Well, but the court, I think, lost sight of the fact that what was being sought by the landlords here was a retroactive relief, retroactive declaratory relief, to which they were entitled for the takings that occurred during the time period of the proclamations. That renders this situation not moot. These cases that we've talked about usually focus the mootness cases... Does that apply to your contracts clause claim as well? I think so, Your Honor. And what law would allow you to collect damages from the government in a contracts clause  I think, Your Honor, you'd be able to recover damages under a 1983-type theory, of course. But the initial focus of the landlord's action here was to seek declaratory relief, to declare first that there was, in fact, the takings, similar to what had been done by the parties of plaintiffs in the Cedar Point case. And similarly so with respect to the contracts clause claim. You have that declaration undertaken first, and then the opportunity to recover damages would be appropriate. Don't we have a problem here because under 1983 you don't get damages against state actors? Well, you have that, but you have the ability to... I think clearly you have the ability to recover damages in connection with the takings clause claim, Your Honor. But not in federal court. How do you do that in federal court? Well, it was done in Cedar Point. The initial predicate in Cedar Point was a declaratory action that was sought in that case about access to the agricultural owner's property. But a difference in that case is that you had the ability to give declaratory relief prospectively because the regulation was still in effect. And here, the regulations have all expired. And so the only declaration that can be made is retrospective, and then perhaps damages. But if you can't get damages in federal court, then where are we left? Well, I still believe you have the opportunity to recover damages generally, Your Honor, even if that's only in state court. The ability to have that... Right, but mootness is about whether we, as a federal court, can give any effective relief. If we can't give any damages, then how is any declaration from us anything more than advisory opinion? Well, in this particular case, it would be more than advisory. That's what declaratory relief is all about. The court has to declare what the Constitution states with respect to takings and with respect to a contract clause type of argument. It's not simply a vague statement of advisory opinion. It's fundamental to any kind of analysis in a potential claim in state court or elsewhere for damages. The court is declaring what the Constitution provides, something that the Declaratory Judgment Act affords this court the opportunity to do generally. Well, I agree with that, except for we don't get to just wander around and declare things as we see them, right? We have to only do that in the context where we're going to impact the relationship between the parties and have some sort of relief as a result of that. So here, where the regulations are no longer in effect, so we aren't going to be able to declare something that's ongoing, it's only in the past, what impact are we having other than to just state the condition of the law? Well, we're doing more than that in this case, because there is an opportunity at some future point for these landlords to collect damages. So a declaration by this court, a federal court, of what the federal Constitution says, I think is fundamental. But moreover, with respect to the mootness analysis, if it's an issue of significant public importance, there is an exception to the mootness doctrine. And as well, there's a situation where you have the potential for recurrence of the issue. I think it's simple to say that the COVID-19 virus has not disappeared entirely. There's a possibility that these kinds of moratoria can be rekindled by state authorities and will be something that would be reinstituted if those authorities believe it's appropriate. It's important for this court to declare in this action whether state authorities can do this kind of deprivation of the rights of landlords as a way of dealing with an emergency. I'm sympathetic to that argument, but I wonder how we get around Brock, which is an opinion that our court issued dealing with school closures related to the COVID pandemic. And they said, and we said in that case, that once the restrictions went away, that the exceptions to mootness for capable of repetition and all that stuff fall away because there's no indication that schools are going to be closed in any immediate term. And aren't we in the same position here? I think the difference is the financial damage, the opportunity to recover damages at some point for these landlords. Counselor, I'm curious if you've got a... Adjust compensation. If there's any case that you can point us to in which a federal court has made a declaration about a past taking and which you then took the judgment were enforced in state court. I can't point to that off the top of my head, Your Honor, but I'm happy to provide that by way of additional authority to the court subsequent to this argument. I don't have that off the top. Declaratory judgments usually are accompanied by a request for an injunction or request for damages. Your injunctive relief is clearly moot. You didn't ask for damages. So this is just a naked declaration about things that have occurred in the past. I think it was clear, Your Honor, that there was going to be an effort to secure damages at some point. It's very akin to what the plaintiffs did, as I mentioned, in Cedar Point. Cedar Point was still in effect, as Judge Forrest has pointed out. Right. But they sought declaratory relief on the question of whether the proclamations were constitutional with an eye toward damages in the future. And that's what we have in this particular case. At some point, there's going to be an effort made to secure damages for the taking that occurred during the time period that the proclamations were in place. And in this particular case, it was, you know, the effort was made to secure a declaration as to the impact of the takings clause. But it's certainly with an eye toward the ultimate securing of damages for just compensation. In Cedar Point and other cases, the Court has emphasized that a taking, physical taking is, in Cedar Point, it was a taking because the state told the property owner that they would have to permit certain people to access their property, even if it was for a limited time. Right. Now, those folks were outside. They were labor organizers. You've got folks who are the tenants of your clients. That seems to put it more within ye than it does within Cedar Point. I don't think so, Your Honor. And there's a really good reason why it doesn't fall within ye. Of course, in that particular case, you have the mobile home nature of the Escondido City Ordinance. Mobile homes are different. You have these large entities, these large mobile homes that are not capable of being readily moved. So ye was aware of that kind of circumstance. That was, the ye court was. And Escondido dealt with that issue. And in that case, not to be lost sight of, rent was still paid. It was a rent control ordinance. Rent was still paid. And there was no effort to deny the landlords in that case the opportunity to evict tenants if they failed to pay rent, the fundamental relationship between landlords and tenants, nor was there any effort to deny them the opportunity to eliminate anybody, to evict anybody from the mobile home park if they violated the park rules. So you had all of the normal indicia of the landlord-tenant relationship that were preserved in ye, unlike the circumstances here. Ultimately, the landlords, although not told expressly by the government, you have to take these people, the de facto reality was that in the absence of the right to exclude, the absence of the ability to use all of the normal indicia that a property owner has to ensure that the fundamental relationship, rent for occupancy, is upheld, it was in effect a forced occupation by these tenants. And in some instances, past the expiration of the lease date. So even the normal kind of, this is how long we're going to have a relationship, was not respected by the proclamations that were involved here. I notice I have limited time, but let me say that we believe that the court should reverse the district court and afford the plaintiffs here the opportunity to proceed with their claims under both the takings clause and the contracts clause. Thank you. Thank you. May it please the court, Christina Sepe on behalf of the state Appalese. The COVID-19 pandemic is the greatest in our country's history and it caused enormous economic distress. So to avert mass displacement and mitigate exposure to COVID in congregate settings, the governor temporarily prohibited most residential evictions. But that proclamation ended in June of 2021, over 21 months ago, and there's no effective relief this court can give, making this case moot and should be dismissed. Otherwise, the court should affirm the district court's judgment because the proclamation reasonably met the government's significant interest in reducing the transmission of COVID and did not affect a physical taking by regulating relationships that began with landlords' invitations. I'd like to turn first to jurisdiction. Like this court's en banc decision in Brock v. Newsom, this is a classically moot case and the court should dismiss it. The governor, like many states and local jurisdictions, imposed an eviction moratorium, but this one ended in 2021 under the terms of the proclamation through subsequent legislation that's engrossed second substitute Senate Bill 5160. The governor also ended the state of emergency in October of 2022, which further extinguished his emergency powers, including the power to issue another moratorium. This appeal is moot and there's no effective relief that the court can give, and we know this based off of the relief that the landlords actually pleaded. They stated that they wanted an injunction permanently enjoining the attorney general from enforcing the proclamation. That's at ER 234, but there's now no longer a proclamation to enjoin. They also stated that they wanted prospective declaratory relief, stating that they wanted the proclamation declared null and void and of no effect as unconstitutional. That's at ER 233 to 34, but given the end of the proclamation, that request would be superfluous and all that would be left is an advisory opinion for this court to give, which is prohibited by Article 3. So bottom line, what about the possibility that they could take a judgment and then enforce it in state court? Well, that's just a half claim, Your Honor. They could seek an inverse condemnation claim in state court in the first instance. What they're asking for right now, though, is basically recasting that prospective relief as retrospective, saying under 2202 of the Declaratory Judgment Act, we can go ahead and seek subsequent relief from the state. But of course, as Judge Forrest has noted, that kind of relief is unavailable against state officials in federal court. And this court has made that clear with respect to the takings claim in cases like 7-Up Pete Venture v. Schweitzer at 523 F. 3rd 948, judged by your opinion in Judge Giacetta v. United States at 653 F. 3rd 898. The 11th Amendment simply precludes federal jurisdiction over action seeking compensation under the Fifth Amendment. What about Section 1983 in the Contracts Clause? That would also be unavailable, Your Honor. Why is that? Did they file a 1983 request here? They did. They specifically filed a 1983 action suing the Attorney General and the Governor in their official capacities. And the landlord sought only declaratory and injunctive relief. You can see that at ER 199 at paragraphs 11 to 12. Did they only sue the Governor and the Attorney General in their official capacity? Yes, Your Honor. Even though it was denominated as the 1983 suit? That is what they expressly alleged at ER 199. Dismissing this case as moot would be in line with what other circuits have done looking at eviction moratoria during the COVID-19 pandemic. For example, the Second Circuit in 36 Apartment Associates, the Third Circuit in Johnson v. Governor of New Jersey, and similarly also the Eighth Circuit in Heights Apartment agreed that the landlord's request for declaratory and injunctive relief were moot. The landlords have invoked the Takings Clause Case Cedar Point, but as Your Honors have noted, that dealt with an operative case with operative effects. And if you actually look at what happened in that case on remand, the District Court entered a judgment declaring the access regulation unconstitutional and enjoined enforcement of the regulation against the plaintiffs. You can see that at docket number 37, at case number 16-CV-185. There was no relief or request for damages. Only declaratory and injunctive relief was entered against that operative statute. The landlords have also cited to an inapplicable state law doctrine of the public interest exception, but that is not one that's recognized in federal courts. Instead, the voluntary cessation exception and the capable of repetition at evading review exception both do not apply for the same reasons that they didn't apply in Brock. That is the end of the emergency order, subsequent legislation, but the case is even stronger here given the termination of the state of emergency, meaning that the governor has extinguished his powers to be able to reissue future emergency orders. And so the mere possibility that the governor may institute another state of emergency, may institute another eviction moratorium, those are all just too remote to save this case from mootness. I'd like to turn next to the contracts. I have to say I've been thinking about this quite a bit because it seems like takings are somewhat different than most other claims because if you get a statement that there was a taking, then the right to compensation is automatic. There's not some additional level of liability proof. It's just about amount. So why doesn't that change this a little bit? Because why couldn't you, in federal court, get a statement that a takings has occurred and then take that, as Judge Bybee has alluded in a couple of his questions over across the street to a state court and say, I have this statement that my constitutional rights have been violated and now it's your job to figure out how much I'm owed. I think that claim could be brought in state court under the federal takings claim or under a state inverse condemnation claim that would actually be able to receive damages. To the extent that the court is concerned about appellate review over the takings clause claim in this action, it remains live in the case that follows. It's just not live in this case given the relief that the landlord has specifically sought in their complaint. That is just declaratory relief that applied prospectively, just injunctive relief that was also prospective. There's just no ability for them to get that kind of retrospective relief under sovereign immunity. That's just not available. If I may turn next to the contracts clause, courts apply a two-step framework and the landlord's claims fail at both steps. At first, the proclamation didn't substantially impair the contractual relationship as the state extensively briefed in their answering brief at pages 47 to 57. But I'd like to focus on the second prong as this court did an apartment association of Los Angeles County because the moratorium was reasonably advancing a significant public purpose. That purpose was significant and legitimate to reduce economic hardship and mitigate the transmission of COVID throughout the state given what we know about the public health consequences of mass displacement during the early stages of the pandemic. We know that several hundred thousands of Washingtonians would have been at risk of eviction and evictions at that scale would have caused tens of thousands of more COVID cases, hundreds of more deaths. As this court had also held an apartment association of Los Angeles, the proclamation there or the emergency order rather there for the city of Los Angeles was reasonable and appropriate. Same two here, given that the state is not the contracting party, so there's deference that's given to the governor's judgments about the help public health policies and the governor had determined that the pandemic would cause serious economic harm and displacement. And as the court held in apartment association, that policy is fairly tied to the stated goal of preventing displacement from homes, which would exacerbate public health problems in the state. And the court in apartment association also highlighted the broader regulatory framework that the moratorium there operated in, given the amount of funding that was available to alleviate some of the burdens encountered by landlords and tenants. And the same two here, over a billion dollars has been appropriated by the state. Over 675 million has been distributed thus far to help landlords and tenants alleviate some of the burdens of the pandemic. Finally, turning to the takings clause. Per se, physical takings occurs when the governor, a government requires a property owner to submit to the physical occupation of private property by a third party stranger. But this case is more likely than in Cedar Point, given that the tenancies in Yee, like here, began with the invitation of the landlords. Tenants weren't forced upon landlords by the government. One of the arguments that the plaintiffs make is that the moratorium prevented them and lasted after the expiration of the lease. And if the lease is expired, then the landlord would, under ordinary contract law, would have a right to reoccupy the property, rent it to somebody else, occupy it himself, whatever. Certainly. And so once the lease term expires in Washington state, tenancies move month to month. I wanted to highlight, though, one facet of the moratorium in that landlords were able to occupy the homes themselves and pursue evictions if they sought to do that. They could do so if they wanted to sell the property. They could do so in health and safety circumstances. What this moratorium did was regulate that relationship between landlords and tenants with respect to nonpayment of rent. I'd like to also highlight that the moratorium also provided several remedies to, I'm sorry, provided a remedy to landlords during the pendency of the moratorium. And that was being able to pursue a breach of contract claim for rent that continued to accrue. It was not eliminated. If the landlords had offered a reasonable repayment plan and their tenants had defaulted or refused on that plan, there's just nothing in the record here showing that the landlords even tried to pursue that alternative remedy in suing for a breach of contract claim, for example. Once a lease moves to a month-to-month basis, usually, I mean, my experience with this has been that that's when sort of everybody acquiesces. That is, the landlord and the tenant both sort of say, not ready to go. Landlord says, that's fine. It just converts to a month-to-month. But there's no reason that it has to convert, right? A landlord gives, what, 30 days' notice and says, yeah, we're not going to go through with that. You've altered that. Yes, Your Honor. He told the landlord that he's going to have to let these folks stay in his property. Why isn't that a physical occupation? Well, this court certainly, I'm sorry, the U.S. Supreme Court in Block v. Hirsch didn't consider that to be a takings where holdover tenants stayed past the expiration of a lease there that dealt with a World War I eviction moratorium that dealt with increased housing prices in Washington, D.C. That wasn't a holdover tenancy that turned into a physical takings. More recently, the Supreme Court in Yee talks about typically regulation of the landlord-tenant relationship isn't going to trigger a per se physical taking. But there is a statement in that case that says it could be a physical taking if it, quote, compels a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy. Why isn't that language triggered here? Because at the outset of this, the landlords had no idea how long this was going to go. And if things had been different out in the world, we might still be under this moratorium. So how is this sort of exception for in perpetuity not triggered here? Well, on the face of each proclamation, it was time limited, lasting a few months and then renewed. And so just on the face of the proclamation, it didn't last in perpetuity. And we know now with the benefit of time that the moratorium lasted for 15 months. Certainly, it has now been expired for longer than it has been in place. So what do you think would trigger this in perpetuity language from Yee? It's hard to tell given the dearth of case law on what that in perpetuity line is. But I think it's helpful to compare what the Supreme Court has upheld in takings clause cases. So, for example, in Yee, one limitation on the Mobile Park homeowners there was being to change the use of their property and evict with only six or 12 months notice. And that doesn't seem so different from the 15 months here. In Tahoe Sierra, the court had upheld a 32-month development moratoria. And certainly in Block v. Hirsch, I believe it was a two-year eviction moratorium. And so we know at least by comparison that that would not fall, I think, in the in perpetuity line. I think to that first exception that Your Honor had identified in Yee as well, it just shows that this is not an appropriate theory in terms of a per se physical taking in that the landlords weren't forced to become landlords in the first instance. And there is just a plethora of case law from this court and the U.S. Supreme Court about how that voluntariness opening up the property to tenants by occupation by the tenants doesn't ensure a per se right to compensation based off of the inability to exclude. That's what this court has stated in CDK Global, what it has stated in Yee, and certainly other cases like FCC and Tahoe Sierra that have talked about regulations on relationships between landlords and tenants not being physical takings. Cedar Point is simply not controlling here, given that that dealt with an access regulation that would have forced agricultural property owners to accept third-party union organizers onto their properties. Cedar Point itself had contrasted invitations with compelled occupations by comparing limitations on how businesses generally open to the public may treat individuals on the premises and saying that they were readily distinguishable from regulations granting a right to invade property close to the public. Certainly in Cedar Point, the access regulation fell into that latter category and this moratorium would have fallen into the former. Before your time runs out, I did have a quick question. Have your claims waived 11th Amendment immunity in terms of, so I don't think that you're challenging the dismissal of the governor, and then with regard to the Attorney General, I don't think that in your briefing you're asserting that he is immune from suit rather than, I think your arguments are more based on the relief and what relief is or isn't available. So the state asserted sovereign immunity as a defense in their answer to the first amendment complaint, and the reason why this issue of sovereign immunity is coming up now is based off of the relief that the landlords are now seeing that they can obtain through their reply brief at page 5 and their 28J response at docket entry 33. They're saying that they now can seek this retrospective relief, which is why the state is now asserting that relief would not be available even had they asserted it, which they haven't pled. Thank you. Do you have another question? Yeah, I just want to know. I have the same question. So you haven't waived anybody's sovereign immunity here? No, no, Your Honor. And so if the court has no further questions, we ask that the court dismiss this appeal as moot because the challenge moratorium ended in June of 2021, and there's no effective relief this court can grant. Thank you. Thank you. Mr. Talmadge, I think you have a couple minutes. We'll give you two minutes. Thank you, Your Honor. Just a couple of points on taking very quickly. First, the notion that merely opening up the properties for rental somehow waives the takings claim is baseless in this particular set of circumstances because opening up the property to rent-free occupation is what we're talking about here. And note that temporary takings are compensable under Cedar Point. Counsel skips past some very significant points with respect to the remedies that are available to landlords under the circumstances here, particularly with respect to the ability to collect past debt. She talks about a reasonable payment plan omitting a very salient factoid here, which is that those reasonable payment plans have to be predicated upon the tenant's financial and health circumstances, something the landlords can never learn. They have no contractual right to secure that information. It's not information that's public. And certainly they can't obtain it in the course of discovery in a lawsuit because the lawsuit's unavailable to them. Under the circumstances, the whole notion of the reasonable payment plan as an excuse to debt collection action is an illusory remedy at best under the circumstances here. The bottom line is no access to security deposits, no access to the courts to collect past debt, no ability to evict tenants who are holding past the date of the lease. Under all the circumstances, they simply are allowing these tenants to occupy the premises rent-free under the circumstances. Counsel, with respect to your 1983 action on the Contracts Clause claim, how do you have a suit against the Attorney General? You only sued him in his personal, I mean, in his official capacity. That's in your complaint. We have the opportunity, Your Honor, I think, to press a 1983 claim against the Attorney General and other public officials. We would have the opportunity- In their official capacity? Not in their official capacity, but in their- Didn't do it. Well, pardon? Did you amend your complaint? Your complaint says in his official capacity. We haven't had the opportunity to amend the complaint because the District Court dismissed the complaint. We're down this far down into this litigation and you haven't sued the Attorney General in his personal capacity? Not at this point, no, Your Honor. Okay. At this point, looking at the face of the complaint, the damages action for the 19- or for the Contracts Clause claim is not valid. Well, Your Honor, we still believe that we've presented a valid Contracts Clause claim. The opportunity to have the court- Right, but you can't recover damages. The opportunity to recover damages is a problematic situation under these circumstances. We concede that, Your Honor. You could have pled it in your complaint. You could have pled it in the alternative. It would have been easy to have added a paragraph or a sentence to the same paragraph. Unfortunately, trial counsel in this case- I'm counsel on appeal, Your Honor. The trial counsel in the case did not do that. Under the circumstances, Your Honor, we still believe that under the facts of this case, the plaintiffs here have alleged an appropriate cause of action for declaratory relief under the Takings Clause and ask the court to so declare the opportunity for the plaintiff's case to go forward and to seek the appropriate declaratory relief in the district court. Thank you. Thank you, counsel. The matter of Jevons v. Inslee v. Ferguson will be submitted.
judges: BYBEE, FORREST, Gordon